UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Alston and Senior Judge Willis
Argued by teleconference

BRENT C. BOUSMAN

MEMORANDUM OPINION[*] BY
v.        Record No. 1109-12-4        JUDGE RANDOLPH A. BEALES
MARCH 19, 2013

CAITLIN K. LHOMMEDIEU

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Michael F. Devine, Judge

K. Stewart Evans, Jr. (EvansStarrett PLC, on briefs), for appellant.

Stephen G. Cochran (Roeder, Cochran & Haight, PLLC, on brief),
for appellee.


Brent C. Bousman ("father") appeals the trial court's finding that he acted in contempt of its

April 28, 2011 order awarding attorneys' fees to Caitlin K. Lhommedieu ("mother"), and father also

appeals the trial court's finding that he was not entitled to an award of attorneys' fees from mother.

Disagreeing with the arguments that father presents on appeal, we affirm the trial court in all

respects and remand the matter to the trial court solely for a determination of the amount of

appellate attorneys' fees to be awarded to mother for the successful litigation of this appeal.

I. BACKGROUND[1]

In July 1996, mother and father entered into a "Stipulation of Agreement" stating, *inter alia*,

that the parties "agree to divide equally, and each pay one-half, of all costs associated with" their

son's undergraduate college education ("college expenses provision").  In February 1996, the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] "According to well-settled principles, we recite the relevant facts in the light most favorable to" mother, "the prevailing party in the [trial] court." Nichols Constr. Corp. v. Va. Mach. Tool Co., LLC, 276 Va. 81, 84, 661 S.E.2d 467, 468 (2008).

parties entered into a property settlement agreement (PSA) that incorporated their earlier Stipulation of Agreement and that also contained the following provision concerning costs and attorneys' fees ("attorneys' fees provision"):

> The parties agree that any costs, including but not limited to counsel fees and court costs incurred by a party in the substantially successful enforcement of any of the agreements, covenants or provisions of this Agreement, whether through litigation or otherwise shall be borne by the defaulting party. Any such costs incurred by a party in the substantially successful defense of any action for enforcement of any of the agreements, provisions or covenants of this Agreement shall be borne by the party seeking to enforce compliance.

The February 21, 1996 final divorce decree entered by the trial court affirmed, ratified, and incorporated the PSA (including the attorneys' fees provision) – which, in turn, had incorporated by reference the parties' Stipulation of Agreement (including the college expenses provision). See Code § 20-109.1 ("Where the court affirms, ratifies and incorporates by reference in its decree such agreement or provision thereof, it shall be deemed for all purposes to be a term of the decree, and enforceable in the same manner as any provision of such decree.").

A. BOUSMAN I: DISPUTE CONCERNING FALL SEMESTER 2010 COLLEGE EXPENSES

The parties' son began attending college in the fall semester of 2010. When father refused to pay one-half of that semester's college expenses, mother filed a petition for a rule to show cause in the trial court seeking enforcement of father's obligation to pay one-half of that semester's expenses under the college expenses provision of the Stipulation of Agreement. In addition, pursuant to the attorneys' fees provision of the PSA, mother sought an assessment of attorneys' fees against father for her costs incurred enforcing the college expenses provision.

In a written order dated March 30, 2011, the trial court ordered father to pay mother "the sum of $27,312.45 on or before June 1, 2011 as and for his one-half share" of the fall semester 2010 college expenses, consistent with the terms of the college expenses provision. The trial court noted

- 2 -

in the same order that it would "take under advisement" mother's claim for attorneys' fees under the attorneys' fees provision of the PSA.

Father then appealed to this Court, referencing the trial court's March 30, 2011 order in his notice of appeal. See Bousman v. Lhommedieu, No. 0932-11-4, 2012 Va. App. LEXIS 20 (Va. Ct. App. Jan. 24, 2012) (hereinafter "Bousman I"). Thus, the issue on appeal in Bousman I was limited to the trial court's ruling that father was obligated to pay one-half of the fall semester 2010 college expenses under the Stipulation of Agreement's college expenses provision – and did not include mother's claim under the attorneys' fees provision of the PSA, given that the trial court had only taken that claim under advisement in its March 30, 2011 order. This Court on appeal in Bousman I affirmed the trial court's finding that father was obligated to pay one-half of the fall semester 2010 college expenses ($27,312.45).

## B. APRIL 28, 2011 ATTORNEYS' FEES ORDER

On April 28, 2011 (after the final order was entered by the trial court in Bousman I), the trial court addressed mother's claim under the attorneys' fees provision of the PSA. The trial court stated in its April 28, 2011 order:

> This matter came to be heard upon [mother's] request for attorney's fees arising from the March 30, 2011 hearing on the Rule to show cause. At the conclusion of the hearing, at which [mother] was the prevailing party, the Court took under advisement [mother's] request for attorney's fees. Upon consideration of the same, and the evidence presented at the March 30, 2011 hearing, it is
>
> Hereby ORDERED that [father] shall pay to [mother] $20,000.00 (twenty thousand dollars) on or before September 1, 2011.

Accordingly, under the terms of the April 28, 2011 order, mother was awarded $20,000 under the attorneys' fees provision of the PSA – and father was obligated to pay mother this amount for her attorneys' fees by September 1, 2011.

The trial court then considered issues raised by the parties that related to father's underlying fall semester 2010 college expenses obligation under the college expenses provision of the Stipulation of Agreement. Granting mother's June 16, 2011 petition for a rule to show cause, the trial court entered an order on July 7, 2011 directing father to show cause why he had not paid mother $27,312.45 – i.e., the amount of college expenses that father was directed by the March 30, 2011 order to pay on or before June 1, 2011. Approximately a month later, on August 9, 2011, the trial court entered an order on mother's motion "grant[ing] judgment against [father], in the amount of $27,312.45 with interest at the judgment rate from June 1, 2011 until paid." Thus, father's fall semester 2010 college expenses obligation that was the subject of the trial court's March 30, 2011 order was reduced to a judgment at mother's request on August 9, 2011. Thereafter, on November 4, 2011, the trial court granted father's motion to dismiss the July 7, 2011 show cause order against father -- finding that mother "elected her remedy by reducing the 3/30/11 award to a judgment order entered August 9, 2011."[2]

C.  JANUARY 9, 2012 SHOW CAUSE ORDER AND MAY 31, 2012 CONTEMPT ORDER

After considering those matters related to father's college expenses obligation, the trial court then returned its attention to father's obligation to pay the $20,000 attorneys' fees award to mother under the attorneys' fees provision of the PSA. On January 9, 2012, on mother's motion, the trial court entered an order directing father "to show cause, if any you can, why you should not be held in contempt of court for your failure to pay the $20,000 in counsel's fees required by this Court's order of April 28, 2011" (in which father had been ordered to pay that sum on or before September 1, 2011).

---

[2] Neither the July 7, 2011 show cause order nor the August 9, 2011 judgment order concerned father's obligation to pay mother $20,000 under the attorneys' fees provision of the PSA, as ordered by the trial court on April 28, 2011 – given that father was not obligated to satisfy the terms of the April 28, 2011 order until September 1, 2011.

Father moved to dismiss the January 9, 2012 show cause order, contending that it was barred by the doctrine of merger because mother had "elected her remedy" when she reduced father's college expenses obligation to a judgment through the entry of the August 9, 2011 order. The trial court denied father's motion to dismiss in a February 16, 2012 bench ruling, finding that the August 9, 2011 judgment order only affected mother's $27,312.45 award for fall semester 2010 college expenses under the March 30, 2011 order (i.e., the final order in Bousman I). The trial court denied reconsideration in a March 8, 2012 written order.

On May 31, 2012, the trial court held a hearing on the January 9, 2012 show cause order. Following the May 31, 2012 hearing (the transcript of which is not part of the record on appeal here), the trial court entered a written order finding father in contempt of the April 28, 2011 order requiring him to pay $20,000 in attorneys' fees to mother by September 1, 2011. The trial court ordered father to pay a minimum of $250 per pay period plus an additional $95 on the last day of each month, until the $20,000 award of attorneys' fees to mother was paid in full.

D. DENIAL OF FATHER'S REQUEST FOR ATTORNEYS' FEES AGAINST MOTHER

In a May 21, 2012 ruling that is also pertinent to this appeal, the trial court denied father's motion for an assessment of attorneys' fees against mother. Father had asserted in this motion that the entry of the trial court's November 4, 2011 order was proof of a substantially successful defense by father of an enforcement action by mother under the college expenses provision of the Stipulation of Agreement – thereby triggering the PSA's attorneys' fees provision entitling him to "[a]ny such costs incurred . . . in the substantially successful defense of any action for enforcement of any of the agreements, provisions or covenants of" the parties.

- 5 -

II. ANALYSIS[3]

This appeal is not about the already resolved question of the fall semester 2010 college expenses that father owes to mother. That question was resolved by this Court's opinion in Bousman I. Instead, this appeal is simply about the attorneys' fees and costs that the trial court awarded to mother (assignments of error one through eleven) and the trial court's denial of father's request for an award of attorneys' fees and costs (assignments of error sixteen and seventeen).

A. ASSIGNMENTS OF ERROR 1-11: DOCTRINE OF MERGER

In his first through eleventh assignments of error, father challenges the trial court's enforcement of the April 28, 2011 attorneys' fees award of $20,000 to mother through the January 9, 2012 show cause order and its subsequent May 31, 2012 contempt order. Father contends that the August 9, 2011 order reducing father's $27,312.45 fall semester 2010 college expenses obligation to a judgment "merged" mother's college expenses claim and attorneys' fees claim into a single monetary judgment only for that amount of money ($27,312.45).

Father relies on the doctrine of merger, a judicially created doctrine that the Supreme Court has described as reflecting one of "four preclusive effects, each conceptually distinct, which a final personal judgment may have upon subsequent litigation." Bates v. Dever, 214 Va. 667, 670, 202 S.E.2d 917, 920 (1974).

> Merger occurs when a valid and final personal judgment for money
> is entered for plaintiff. His original cause of action is merged into
> the judgment and is extinguished. Plaintiff can maintain a

---

[3] Father raises seventeen assignments of error on appeal – but he concedes that his twelfth through fifteenth assignments of error cannot be considered on appeal because the transcript of a June 15, 2012 hearing in the trial court was not made part of the record on appeal. We have an adequate record on appeal to review father's remaining assignments of error, and we apply settled principles of appellate review for those assignments of error. We review issues of law *de novo*, see Ahari v. Morrison, 275 Va. 92, 95, 654 S.E.2d 891, 893 (2008), and we do not disturb the trial court's factual findings unless they are plainly wrong or without evidence to support them, see Code § 8.01-680.

> subsequent action only on the judgment and not on the original cause of action. Restatement of Judgments § 47 (1942).

Id. at 670 n.3, 202 S.E.2d at 920 n.3; see also Beazley v. Sims, 81 Va. 644, 648 (1886) (explaining that, under the doctrine of merger, the original cause of action "is drowned in the judgment and must henceforth be regarded as *functus officio*").

Father contends that the January 9, 2012 show cause order relating to his $20,000 attorneys' fees obligation is simply void because it was entered after the August 9, 2011 judgment order – which, according to father's argument, reduced mother's college expenses claim and mother's attorneys' fees into a single monetary judgment under the doctrine of merger. Therefore, father asserts that the trial court lacked authority to enter the May 31, 2012 contempt order at the conclusion of that date's show cause hearing on the January 9, 2012 show cause order. We disagree with father's reasoning and conclusion for several reasons.

1. THE DOCTRINE OF MERGER APPLIES TO *CONTRACTUAL* REMEDIES

"The law of merger is well settled and applies to acceleration of *contractual* remedies." Bazzle v. Bazzle, 37 Va. App. 737, 746, 561 S.E.2d 50, 55 (2002) (emphasis added). Established case law from the Supreme Court of Virginia addressing the doctrine of merger holds, "'[a] demand arising from an entire contract cannot be divided and made the subject of several suits; and if several suits are brought for a breach of such a contract, a judgment upon the merits in either will bar a recovery in the others.'" Jones v. Morris Plan Bank, 168 Va. 284, 293, 191 S.E. 608, 611 (1937) (quoting Hancock v. White Hall Tobacco Warehouse Co., 102 Va. 239, 242-43, 46 S.E. 288, 289 (1904)); see Sands v. Roller, 118 Va. 191, 193, 86 S.E. 857, 858 (1915) ("[W]hen the judgment was rendered on the contract in this case, such contract and all rights under it ceased to exist and the judgment became the only and superior evidence of the defendant's liability."). The effect of a judgment under the doctrine of merger is to "merge[] the entire *contract* upon which the suit was brought," such that "the plaintiff [can]not afterwards

maintain a suit for another recovery under that *contract*." Sands, 118 Va. at 192-93, 86 S.E. at 858 (emphasis added).

Here, however, the issues raised in this litigation are not purely contractual. The parties' agreements were *incorporated* in the final divorce decree under Code § 20-109.1. The terms of those agreements – i.e., the PSA and the Stipulation of Agreement – are "enforceable in the same manner as any provision of such decree." Code § 20-109.1.

As the Supreme Court has held, the purpose of Code § 20-109.1 "is to facilitate enforcement of the terms of an incorporated agreement by the contempt power of the court." Morris v. Morris, 216 Va. 457, 459, 219 S.E.2d 864, 866-67 (1975). Thus, when a trial court exercises its authority to incorporate an agreement of the parties into the final decree, "the parties' agreement 'shall be deemed for all purposes to be a term of the decree, and enforceable in the same manner as any provision of such decree.'"[4] Rogers v. Rogers, 51 Va. App. 261, 273, 656 S.E.2d 436, 442 (2008) (quoting Code § 20-109.1). Furthermore, "[i]n a show cause hearing, the moving party need only prove that the offending party failed to comply with an order of the trial court." Alexander v. Alexander, 12 Va. App. 691, 696, 406 S.E.2d 666, 669 (1991).

In this case, the attorneys' fees provision of the PSA was incorporated into the final decree. When mother prevailed in the trial court on her claim to enforce the parties' agreement concerning college expenses (which this Court affirmed in Bousman I), mother became entitled to an award of attorneys' fees under the attorneys' fees provision of the PSA, as incorporated

---

[4] This Court's prior opinion in Bousman I directly addresses this same point. "Where, as here, the trial court has incorporated the agreement of the parties into the final decree of divorce, the agreement acquired a dual nature as *both* a contract *and* an order of the court." Bousman I, 2012 Va. App. LEXIS 20, at *5 (emphasis added). "As this Court has noted, when a party invokes a court's contempt authority and seeks to bring a party into compliance with the court's order, '[i]t is *not the contract but rather the decree* that is being enforced.'" Id. (emphasis added) (quoting Doherty v. Doherty, 9 Va. App. 97, 99, 383 S.E.2d 759, 760 (1989)).

- 8 -

into the final decree. She was awarded $20,000 in attorneys' fees in the April 18, 2011 order. When father failed to comply with the terms of that order and pay the attorneys' fees award by September 1, 2011, the trial court issued the January 9, 2012 show cause order. The trial court then found father in contempt of the court's attorneys' fees order on May 31, 2012.

Mother's decision to have father's *college expenses* obligation reduced to a judgment – as reflected in the August 9, 2011 judgment order – simply could not and did not negate father's obligation to pay mother the $20,000 *attorneys' fees* award under the terms of the April 28, 2011 order. As the trial court noted in its bench ruling on February 16, 2012, the August 9, 2011 judgment order *only* served to reduce father's $27,312.45 obligation for the fall semester *college expenses* to a judgment.[5] The entry of the August 9, 2011 judgment order in no way altered mother's right to an attorneys' fees award under the attorneys' fees provision of the PSA, as incorporated into the final decree – and did not somehow erase father's $20,000 attorneys' fees obligation under the April 18, 2011 order, which was entered pursuant to the final decree's incorporation of the PSA's attorneys' fees provision. Therefore, contrary to father's argument on appeal, the August 9, 2011 judgment order reducing father's college expenses obligation to a judgment could not and did not render the trial court's January 9, 2012 show cause order pertaining to father's attorneys' fees obligation void.

2. THE AGREEMENT IN BAZZLE WAS *NOT* INCORPORATED INTO THE FINAL DECREE

During oral argument before this Court, father's counsel could not cite any Virginia appellate decision applying the doctrine of merger in a domestic relations context where the

---

[5] Trial courts "have the authority to interpret their own orders," and appellate courts "give deference to the interpretation adopted by the lower court." Fredericksburg Constr. Co., Inc. v. J.W. Wyne Excavating, Inc., 260 Va. 137, 144, 530 S.E.2d 148, 152 (2000). Here, the trial court interpreted the August 9, 2011 judgment order based on its plain language. The trial court also reasonably interpreted the August 9, 2011 judgment order so as not to contradict its April 28, 2011 order – which gave father *until September 1, 2011* to pay mother the $20,000 attorneys' fees award.

parties' agreements have been affirmed, ratified, and incorporated into the final decree. Father's reliance on this Court's decision in Bazzle, 37 Va. App. at 744-47, 561 S.E.2d at 53-55, where the doctrine of merger was held to be applicable, is misplaced. There, the pertinent portions of the Bazzles' property settlement agreement concerning spousal support *were not incorporated* into their final divorce decree. Id. at 744-45, 561 S.E.2d at 54. Thus, as this Court noted in Bazzle, "the provisions of the support agreement d[id] not have the full force and effect of a court's decree and [were] *not enforceable by the court's contempt powers.*" Id. at 745, 561 S.E.2d at 54 (emphasis added).

Unlike a purely contractual scenario (such as Bazzle), the trial court's January 9, 2012 show cause order on attorneys' fees and then its May 31, 2012 contempt order for failure to pay those attorneys' fees were entered to enforce the trial court's April 18, 2011 *order* on attorneys' fees. Those orders did not *merely* enforce the parties' contract, i.e., the attorneys' fees provision of the PSA, as that provision was duly incorporated into the final decree under Code § 20-109.1 and was enforceable under that statute in the same manner as any other provision of the decree. See Carswell v. Matterson, 224 Va. 329, 332, 295 S.E.2d 899, 901 (1982) (explaining that a trial court "has the authority to hold [an] offending party in contempt for acting in bad faith or for willful disobedience of its order"). Here, unlike in Bazzle, the parties' agreements were incorporated into the final decree under Code § 20-109.1, making the attorneys' fees provision of the PSA fully and validly "enforceable by the [trial] court's contempt powers." Bazzle, 37 Va. App. at 745, 561 S.E.2d at 54. There is no support under Virginia law for the conclusion that a trial court's statutory enforcement authority under Code § 20-109.1 is somehow nullified by the judicially created doctrine of merger – and we certainly decline to hold that the doctrine of merger somehow applies under the circumstances of this case.

### 3. NO PURPOSE FOR THE DOCTRINE OF MERGER HERE

Father also fails to establish any proper purpose for applying the doctrine of merger in this case. In <u>Jones</u>, 168 Va. at 292, 191 S.E. at 610, the Supreme Court discussed the underlying purposes supporting the application of the doctrine of merger, explaining:

> The object of the rule against splitting causes of action is to prevent a multiplicity of suits. The law does not favor such a multiplicity; instead it favors any action that will prevent other actions involving the same transaction. The rule exists <u>mainly for the protection of defendant</u>, is intended to suppress serious grievances, and is <u>applied to prevent vexatious litigation</u> and to avoid the costs and expenses incident to numerous suits on the same cause of action. It is based on the maxims, *Interest reipublicae ut sit finis litium* (It concerns the commonwealth that there be a limit to litigation), and *Nemo debet bis vexari pro una et eadem causa* (No one ought to be twice vexed for one and the same cause).

<u>Id.</u> (internal quotation marks and citation omitted).

While such purposes were present in <u>Bazzle</u>, they are not present here. In <u>Bazzle</u>, the doctrine of merger barred potentially vexatious litigation by Mrs. Bazzle – a subsequent cause of action initiated by Mrs. Bazzle under the parties' (unincorporated) settlement agreement, which the trial court there characterized as an attempt to "double dip" against Mr. Bazzle. <u>Bazzle</u>, 37 Va. App. at 744, 561 S.E.2d at 54. Mother here does not seek any kind of similar "double dip" against father, and father requires none of the protections that the doctrine of merger afforded Mr. Bazzle. Mother prevailed on her claim under the college expenses provision of the Stipulation of Agreement, and, therefore, by operation of the attorneys' fees provision of the PSA, she was entitled to an award of the attorneys' fees (and costs) that she expended in her enforcement of the college expenses provision. Father does not dispute the validity of the attorneys' fees provision of the PSA, but he instead argues that mother waived her ability to

- 11 -

obtain the $20,000 in attorneys' fees awarded to her through what father perceives was a procedural misstep taken by mother.[6]

However, the focus of the doctrine of merger certainly is not to ensnare a party in perceived procedural technicalities. Instead, the doctrine of merger "is a salutary principle," is "a rule of justice, *not to be classed among technicalities*, and is not altogether a rule of original legal right, but is rather an equitable interposition of the courts to prevent a multiplicity of suits through reasons of public policy." Jones, 168 Va. at 292, 191 S.E. at 610 (internal quotation marks and citation omitted) (emphasis added). Simply put, father fails to demonstrate any appropriate purpose for applying the doctrine of merger based on the circumstances of this case.

#### 4. THE EFFECT OF THE APPEAL IN BOUSMAN I

We also observe that father's appeal of the fall semester 2010 college expenses award (but *not* the attorneys' fees award) in Bousman I further renders the circumstances here incompatible with applying the doctrine of merger. Father appealed the trial court's March 30, 2011 award to mother of $27,312.45, representing half of the fall semester 2010 college expenses, in Bousman I. In the March 30, 2011 order, the trial court took "under advisement" mother's request for attorneys' fees – without including specific language indicating that it retained jurisdiction over the entirety of the case until it addressed mother's pending request for attorneys' fees.

Both this Court and the Supreme Court have held:

> "[W]hen a trial court enters an order, or decree, in which a
> judgment is rendered for a party, unless that order expressly
> provides that the court retains jurisdiction to reconsider the
> judgment or to address other matters still pending in the action

---

[6] On brief, father argues that mother could (and should) "have requested a judgment for $47,312.45" in the August 9, 2011 judgment order – to reflect the $27,312.45 college expenses award as well as the $20,000 attorneys' fees award. Consequently, father asserts that, "[h]aving made the election of remedies, [mother] cannot rectify her *mistake* by splitting her cause of action." (Emphasis added).

> before it, the order renders a final judgment and the twenty-one day time period prescribed by Rule 1:1 begins to run."

Carrithers v. Harrah, 60 Va. App. 69, 73-74, 723 S.E.2d 638, 640 (2012) (quoting Johnson v. Woodard, 281 Va. 403, 409, 707 S.E.2d 325, 328 (2011)); see Super Fresh Food Markets of Va., Inc. v. Ruffin, 263 Va. 555, 561, 561 S.E.2d 734, 737 (2002) (same). "[I]f a trial court wishes such an order not to be a final order, it must 'includ[e] specific language [in the order rendering judgment] stating that the court is retaining jurisdiction to address matters still pending before the court.'" Carrithers, 60 Va. App. at 74-75, 723 S.E.2d at 640 (quoting Johnson, 281 Va. at 409-10, 707 S.E.2d at 328).

Father could have requested that the trial court retain jurisdiction over mother's fall semester 2010 college expenses claim until the court also ruled on mother's attorneys' fees claim, but father made no such request. Father instead initiated the appeal in Bousman I, which concerned only mother's fall semester 2010 college expenses claim. Thus, father contributed to bifurcating mother's claims under the college expenses provision and the attorneys' fees provision. However, father also asserts that mother's claims merged with the entry of the August 9, 2011 judgment order. A party "'may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory. Nor may a party invite error and then attempt to take advantage of the situation created by his own wrong.'" Rowe v. Commonwealth, 277 Va. 495, 502, 675 S.E.2d 161, 164 (2009) (quoting Cangiano v. LSH Bldg. Co., 271 Va. 171, 181, 623 S.E.2d 889, 895 (2006)).

Accordingly, we conclude that the trial court certainly did not err when it found that the doctrine of merger is inapplicable here.

B.  ASSIGNMENTS OF ERROR 16 AND 17:  FATHER'S REQUEST FOR ATTORNEYS' FEES

Father also argues that the trial court committed reversible error when it denied father's motion for attorneys' fees against mother.  Father relies on the following portion of the PSA's attorneys' fees provision:

> Any such costs incurred by a party *in the substantially successful defense* of any action for enforcement of any of the agreements, provisions or covenants of this Agreement shall be borne by the party seeking to enforce compliance.

Father contends that the trial court's November 4, 2011 order dismissing the July 7, 2011 rule to show cause against him was evidence of a "substantially successful defense" under the terms of the PSA's attorneys' fees provision.

In most situations, "a prevailing party generally cannot recover attorneys' fees from the losing party."  Ulloa v. QSP, Inc., 271 Va. 72, 81, 624 S.E.2d 43, 49 (2006).  However, this general rule "does not prevent parties to a contract from adopting provisions that shift the responsibility of attorneys' fees to the losing party in disputes involving the contract."  Dewberry & Davis, Inc. v. C3NS, Inc., 284 Va. 485, 495, 732 S.E.2d 239, 243 (2012).  "[T]he contract is to be 'construed as written, without adding terms that were not included by the parties.'"  Id. (quoting PMA Capital Ins. Co. v. US Airways, Inc., 271 Va. 352, 357-58, 626 S.E.2d 369, 372 (2006)).  "When the terms of a contract are clear and unambiguous, the terms will be given their plain and ordinary meaning."  Marina Shores, Ltd. v. Cohn-Phillips, Ltd., 246 Va. 222, 225-26, 435 S.E.2d 136, 138 (1993).

Here, the attorneys' fees provision of the PSA entitles a party who has made a "substantially successful defense of any action for enforcement" of the parties' agreements an award of "costs, including but not limited to counsel fees and court costs," which "shall be borne by the party seeking to enforce compliance."  The word "substantially" means "in a substantial manner," "so as to be substantial."  Webster's Third New International Dictionary 2280 (1981).

The word "substantial," in turn, is defined in pertinent part as "something of moment: *an important or material matter*, thing, or part." Id. (emphasis added). Based on the plain and ordinary meaning of these terms, the trial court's finding that father was not entitled to an award of attorneys' fees is supported by evidence in the record on appeal – and, therefore, is not plainly wrong. See Code § 8.01-680. The dismissal of the July 7, 2011 show cause order against father simply did not relate to "an important or material matter" – or so the trial court reasonably could have concluded, in light of all of the circumstances and issues presented in this case.

In support of this conclusion, we emphasize *the purpose* of the July 7, 2011 show cause order – which was to enforce compliance with the March 30, 2011 order awarding $27,312.45 in fall semester 2010 college expenses to mother. There is no question that father owes this amount of money to mother, as that issue was resolved in <u>Bousman I</u>. Mother simply chose not to pursue payment of father's debt to her through further action under the July 7, 2011 show cause order when she instead had that college expenses award against father reduced to a judgment in the August 9, 2011 order. The August 9, 2011 order awarding judgment to mother on the college expenses claim essentially superseded the July 7, 2011 show cause order pertaining to that same claim. Father's obligation to pay the $27,312.45 in college expenses remained unaffected.

Viewing the evidence in the light most favorable to mother (as we must, since she was the prevailing party below), all the November 4, 2011 order reflects is mother's election of a remedy – nothing more and nothing less. Accordingly, the trial court did not err in finding that this November 4, 2011 order was an insufficient basis upon which to award father attorneys' fees under the PSA.

### III. CONCLUSION

The trial court appropriately invoked its contempt authority to enforce the terms of its April 28, 2011 order awarding attorneys' fees to mother. In addition, the trial court committed

- 15 -

no error in concluding that father was not entitled to an award of attorneys' fees, as father did not raise "a substantially successful defense" to an action enforcing the parties' agreements. Therefore, we affirm the trial court's judgment in all respects.

Finally, under the attorneys' fees provision of the PSA, "any costs, including but not limited to counsel fees and court costs incurred by a party in the substantially successful enforcement of any of the agreements, covenants or provisions of this Agreement, whether through litigation or otherwise shall be borne by the defaulting party." In light of this provision, we award appellate attorneys' fees and costs related to this appeal to mother. Accordingly, we remand to the trial court solely for a determination of the amount of attorneys' fees and costs to be awarded for mother's successful litigation of this appeal.

Affirmed and remanded.