Present:  All the Justices

BILL GREEVER CORPORATION, ET AL.

v.  Record No. 972543    OPINION BY JUSTICE ELIZABETH B. LACY
                                September 18, 1998
TAZEWELL NATIONAL BANK

FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
Keary R. Williams, Judge

In this action by a debtor against a former creditor, we consider whether a bankruptcy court's prior order confirming the debtor's reorganization plan containing a reservation of rights clause was a final disposition of all disputes between the debtor and the creditor.

In 1992, Bill B. Greever, Sr., filed a petition for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Virginia.  Greever listed Tazewell National Bank (Tazewell) as a creditor.  In Schedule B of his bankruptcy petition, Greever was required to list "contingent and unliquidated claims of every nature, including . . . counterclaims of the debtor." Greever responded "NONE."  In his "Disclosure Statement Relating to Bill Greever and Plan of Reorganization" (the reorganization plan), however, Greever included the following reservation language

> nothing in this plan would waive any and all of the
> debtors [sic] rights to bring in [sic] action
> against any party or parties which the debtor
> believes may be indebted to the debtor for any

causes of action that may exist pre-petition. The purpose of this Chapter 11 plan is not to settle or waive any of those causes of action but to preserve all of those if bringing the same is determined by the debtor to be necessary in the future.

On December 10, 1992, the bankruptcy court entered an order confirming Greever's reorganization plan. Tazewell did not note any objections and did not appeal the confirmation order.

On April 24, 1994, Greever and the Bill Greever Corporation, wholly owned by Greever, (collectively "Greever") filed a motion for judgment against Tazewell in the Circuit Court for the County of Tazewell.[1] Greever asserted tortious interference with business expectancy, breach of contract, and various other lender liability claims against Tazewell arising out of the parties' pre-bankruptcy relationship. Tazewell filed a motion for summary judgment, arguing, inter alia, that the bankruptcy confirmation order was a final disposition of all disputes between Greever and Tazewell, and the doctrine of res judicata, therefore, precluded Greever's claims.[2] The trial court agreed and granted summary judgment in favor of Tazewell. Greever then filed a motion for reconsideration,

---

[1] Greever also asserted claims against another former creditor, Citizens Bank of Tazewell. Greever's claims against Citizens Bank were later severed from the instant cause of action and are not at issue in this appeal.

[2] At the hearing on Tazewell's motion for summary judgment, Greever conceded that Bill Greever, Sr., and the Bill Greever Corporation are privies, and that if res judicata

citing additional authority, which the trial court denied.  We awarded Greever an appeal.

                                    I.

     We begin our consideration of this appeal by reviewing the doctrine of res judicata, the rule against claim-splitting, and the finality of bankruptcy orders.  The judicially created doctrine of res judicata rests upon public policy considerations which favor certainty in the establishment of legal relations, demand an end to litigation, and seek to prevent the harassment of parties.  Bates v. Devers, 214 Va. 667, 670, 202 S.E.2d 917, 920 (1974)(citations omitted).  The doctrine prevents "relitigation of the same cause of action, or any part thereof which could have been litigated, between the same parties and their privies."  Id. at 670-71, 202 S.E.2d at 920-21.  A claim which "could have been litigated" is one which "if tried separately, would constitute claim-splitting."  Id. at 670 n.4, 202 S.E.2d at 920 n.4.

     "Claim-splitting" is bringing successive suits on the same cause of action where each suit addresses only a part of the claim.  Jones v. Morris Plan Bank of Portsmouth, 168 Va. 284, 291, 191 S.E. 608, 610 (1937).  Courts have imposed a

---

bars Bill Greever, Sr.'s, personal claims against Tazewell, it also bars the corporation's claims.

rule prohibiting claim-splitting based on public policy considerations similar to those underlying the doctrine of res judicata:  avoiding a multiplicity of suits, protecting against vexatious litigation, and avoiding the costs and expenses associated with numerous suits on the same cause of action.  Id. at 291-92, 191 S.E. at 610.

Applying the doctrine of res judicata enforces the rule against claim-splitting by barring further litigation of claims which "could have been litigated" between the parties in an earlier proceeding.  The rule against claim-splitting is not absolute, however.  A defendant may waive the rule by express or implied consent.  Gary Steel Products Corp. v. Kitchin, 197 Va. 471, 474, 90 S.E.2d 120, 123 (1955).  If this exception to the rule against claim-splitting is applicable, res judicata will not bar the subsequent suit.

Federal courts which have considered the application of res judicata in the context of bankruptcy confirmation orders have not discussed "claim-splitting" as such, but have generally held that claims against creditors which could have been brought in a bankruptcy proceeding and which might have affected the parameters of the bankruptcy proceeding may not be litigated in a subsequent proceeding in another court. Eubanks v. Federal Deposit Ins. Corp., 977 F.2d 166, 170 (5th Cir. 1992); Sure-Snap Corp. v. State Street Bank and Trust

4

Co., 948 F.2d 869, 870 (2nd Cir. 1991). In seeking the protection of the bankruptcy court, the debtor is required to list all its assets and liabilities, including contingent and unliquidated claims "of every nature, including counterclaims of the debtor." Id. at 873. This requirement is designed to allow creditors to take an informed position on the debtor's proposed reorganization plan. Thus, when the bankruptcy court enters an order confirming a proposed reorganization plan, that order disposes of all matters between the debtor and the creditors in the manner prescribed by the confirmed plan. See In Re Grimm, 168 B.R. 102, 110-11 (Bankr. E.D. Va. 1994)(bankruptcy confirmation order final judgment on the merits for res judicata purposes). Any attempt by the debtor to resurrect a claim against a creditor which could have been brought in a prior bankruptcy proceeding, therefore, is barred by the doctrine of res judicata. Eubanks, 977 F.2d at 174-75; Sure-Snap, 948 F.2d at 877.

On appeal, Greever does not dispute the general principle that the doctrine of res judicata is applicable to bankruptcy confirmation orders. Greever seeks to avoid its application, however, based on "exceptions" to the rule against claim-splitting contained in § 26 of the Restatement (Second) of Judgments (1982) (the Restatement). First, Greever argues that by failing to note an objection to the claim reservation

5

language confirmed by the bankruptcy court's order, Tazewell "acquiesced" to "claim-splitting," and cannot now assert the defense of res judicata. Second, Greever argues that by confirming a reorganization plan which contained claim reservation language, the bankruptcy court expressly preserved Greever's right to maintain later actions against creditors. Finally, Greever claims that application of res judicata to the instant case would defeat the public policies of "fairness, justice and judicial economy." We address these arguments in order.

## II.

Greever first seeks to avoid the application of res judicata by applying Subsection (1)(a) of § 26 of the Restatement, which states that the general rule prohibiting claim-splitting set out in § 24 of the Restatement does not apply when

> The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein . . . .

Greever argues that under this rule, res judicata should not be applied in this case because Tazewell acquiesced in Greever's splitting of his claims by failing to object to the reservation language in the reorganization plan. Thus, Greever concludes, he is entitled to proceed with the instant litigation and is not barred by res judicata.

6

Applying this subsection, other courts have uniformly held that a defendant can acquiesce to claim-splitting by failing to object to a reservation clause in a prior consent decree, settlement agreement, or confirmed bankruptcy reorganization plan.  See e.g., Keith v. Aldridge, 900 F.2d 736, 740-42 (4th Cir. 1990); Medina v. Wood River Pipeline Co., 809 F.2d 531, 533-34 (8th Cir. 1987); Terrebonne Fuel & Lube v. Placid Refining Co., 666 So.2d 624, 632-34 (La. 1996).  These decisions generally require, however, that the reservation language expressly preserve specific claims or that the facts and circumstances clearly show that the parties intended to preserve specific claims for later adjudication.  Keith, 900 F.2d at 740-42; Medina, 809 F.2d at 533-34; Shelar v. Shelar, 910 F. Supp. 1307, 1313 n.4 (N.D. Ohio 1995); Terrebonne, 666 So.2d at 634-36.  See also Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 985 F.2d 1067, 1069-70 (11th Cir. 1993).

We have not adopted § 26(1)(a) of the Restatement. However, the decisions based on this subsection are instructive because they interpret "acquiescence" under the Restatement in a manner similar to our standard for waiving the rule against claim-splitting.  Gary Steel, 197 Va. at 474, 90 S.E.2d at 123.

The requirements for finding "acquiescence" reflect the general principle that waiver requires both knowledge of the

7

facts basic to exercise of the right waived and an intent to waive the right. Employers Commercial Union Ins. Co. of America v. Great American Ins. Co., 214 Va. 410, 412-13, 200 S.E.2d 560, 562 (1973); May v. Martin, 205 Va. 397, 404, 137 S.E.2d 860, 865 (1964). Therefore, we agree that a defendant may waive the claim-splitting rule by failing to object to reservation language if the reservation clause clearly expresses the parties' intent to preserve specific claims or if the circumstances of the case make it clear that the defendant was aware that additional claims could be asserted against him later.

Here, the language used by Greever in his reorganization plan's reservation clause was generic and did not identify any specific creditors or claims. Nevertheless, Greever, relying on Terrebonne, asserts that the claim reservation language was sufficiently explicit to put Tazewell and the bankruptcy court "on notice of Mr. Greever's intent to reserve causes of action which he might have, presumably to be asserted at a later date."

In Terrebonne, the claim reservation language in a debtor's reorganization plan was similar to the language Greever included in his plan. 666 So.2d at 627. After the plan was confirmed, the debtor filed a state court breach of contract claim against one of its former creditors. Id. at

8

628. The Supreme Court of Louisiana held that by failing to appeal the confirmation of the reorganization plan, the creditor had "acquiesc[ed] [to] the reservation of claims." Id. at 634. Greever argues, therefore, that Tazewell's failure to object to similar claim reservation language here can constitute a waiver of the rule against claim-splitting.

In Terrebonne, however, the Supreme Court of Louisiana relied on facts and circumstances in addition to the reservation language in concluding that the creditor had acquiesced to claim-splitting. During the Terrebonne bankruptcy proceeding, the debtor attempted to raise its breach of contract claim against the creditor. The bankruptcy court declined to exercise jurisdiction over the breach of contract claim and directed the debtor to bring the claim in state court. Id. at 627-28. The Supreme Court of Louisiana concluded that under these circumstances, the parties "were aware" that the specific claims at issue would be asserted later. Id. at 634.

The facts in this case differ significantly from those underlying the holding in Terrebonne. Here, Greever did not attempt to raise any claims against Tazewell in the bankruptcy proceeding. Greever acknowledged that he "never disclosed to the bankruptcy court or to his creditors the nature or existence of any of the specific claims asserted" in the

9

instant litigation. Furthermore, Greever represented in Schedule B of his bankruptcy petition that he did not have any additional claims or counterclaims against his creditors. The trial court specifically found that Tazewell "had no knowledge of any claims or potential claims against them by [Greever] at the time the confirmed plan was approved." These facts do not show either that the reservation language expressly preserved specific claims or that the parties intended to preserve specific claims for later adjudication. Accordingly, there is no basis to conclude that Tazewell "acquiesced in" or waived the rule against claim-splitting by express or implied consent.

### III.

Greever, relying on Subsection (1)(b) of § 26 of the Restatement, next asserts that the trial court erred in failing to hold that the bankruptcy court "expressly reserved" Greever's right to maintain later actions against creditors when it confirmed the reorganization plan containing the reservation clause. That subsection of the Restatement provides that the rule against claim-splitting does not apply if "[t]he court in the first action has expressly reserved the plaintiff's right to maintain the second action." Restatement (Second) of Judgments § 26(1)(b)(1982).

10

Unlike the provisions of Subsection (1)(a) of the Restatement rule, there is no Virginia counterpart for Subsection (1)(b).  Rather, we have held that the rule against claim-splitting "exists for the benefit and protection of the defendant."  Gary Steel, 197 Va. at 474, 90 S.E.2d at 122.  Thus, the right to waive the rule has been limited to the defendant.

Assuming without deciding that an exception to the rule against claim-splitting can occur by virtue of court action, we cannot say that the bankruptcy court's action confirming the reservation of claims clause in Greever's reorganization plan was in any way an "express" preservation of those claims.  The bankruptcy court in this case merely confirmed a plan containing generic claim reservation language which did not identify any specific claims or any specific creditors.  It would be inconsistent to conclude that, although the reservation clause was insufficiently explicit to charge Tazewell with "knowledge" of Greever's claims for the purpose of waiving the rule against claim-splitting, the language was sufficiently clear to constitute an "express" preservation of Greever's claims by the bankruptcy court.  In addition, as the trial court noted, the confirmed reorganization plan also contained language preserving the bankruptcy court's jurisdiction over any disputes "regarding the interpretation

11

of any provision(s) of the Plan," or any "cause(s) of action . . . referenced . . . in this plan." Therefore, there is nothing in this record that would support a conclusion that the bankruptcy court "expressly" preserved Greever's right to file a subsequent state court action against Tazewell.

## IV.

Greever's final argument is that applying res judicata in the instant case defeats "the public policies of fairness, justice and judicial economy," citing Subsection (1)(e) of § 26 of the Restatement.[3] Like this subsection of the Restatement, Virginia recognizes that applying the doctrine of res judicata may not be appropriate when it conflicts with more important public policies. Bates, 214 Va. at 670 n.2, 202 S.E.2d at 920 n.2. The facts of this case, however, do not justify overriding the doctrine of res judicata on this basis.

The purpose of the res judicata doctrine, as we have noted, is to establish certainty in legal relations, to demand

---

[3] Subsection (1)(e) provides that the general rule prohibiting claim splitting set out in § 24 does not apply when
> [f]or reasons of substantive policy in a case involving a continuing or recurrent wrong, the plaintiff is given an option to sue once for the total harm, both past and prospective, or to sue from time to time for the damages incurred to the date of suit, and chooses the latter course.

Restatement (Second) of Judgments § 26(1)(e)(1982).

an end to litigation, and to prevent the harassment of parties. Bates, 214 Va. at 670, 202 S.E.2d at 920. In a bankruptcy proceeding, there is an especially strong interest in finality. Sure-Snap, 948 F.2d at 877. One seeking bankruptcy protection has a duty to schedule, for the benefit of creditors, all his interests and property rights. Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 (3rd Cir. 1988). In the instant case, Greever failed to disclose his claims against Tazewell either as required by Schedule B of his bankruptcy petition or otherwise, thereby representing to the bankruptcy court and to Tazewell that he had no counterclaims against Tazewell.

The principles underlying the doctrine of res judicata are fully implicated in this case. We see no reason why "fairness, justice and judicial economy" should preclude application of the doctrine to Greever's cause of action.

For the above reasons, we affirm the trial court's conclusion that Greever's lender liability claims against Tazewell are barred by the doctrine of res judicata.

Affirmed.

13